UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
PATRICK MONESTIME,                       :

                   Petitioner,      :    10 Civ. 1374 (WHP)
   -against-

                              :    MEMORANDUM & ORDER

EDWARD REILLY, *Facility Director,*
*U.S. Immigration and Customs*           :
*Enforcement, Varick Detention Facility,*
CHRISTOPHER SHANAHAN, *New*          :
*York Field Office Director for the Office*
*of Detention and Removal for U.S.*         :
*Immigration and Customs Enforcement,*
JANET NAPOLITANO, *Secretary of*         :
*Homeland Security,* ERIC HOLDER,
*Attorney General of the United States,* and :
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,                       :

                Respondents.   :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/9/2010

WILLIAM H. PAULEY III, District Judge:

        Patrick Monestime ("Monestime") petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Monestime has been detained by the Department of Homeland Security (the "DHS") Bureau of Immigration and Customs Enforcement (the "ICE") since August 6, 2009. Monestime petitions for immediate release from custody or, in the alternative, a constitutionally adequate hearing in which Respondents would be required to demonstrate that his continued detention is justified. For the following reasons, the petition for a writ of habeas corpus is granted, and Respondents are ordered to give Monestime an individualized bond hearing.

1

BACKGROUND

Monestime, a Haitian citizen, lawfully entered the United States in 1988 at the age of nine. (Amended Petition for Writ of Habeas Corpus dated Feb. 23, 2010 ("Pet.") ¶¶ 11-12; Ex. A: Declaration of Lucie Monestime dated Feb. 11, 2010 at 1-2.) In 1995, he adjusted his immigration status to "Lawful Permanent Resident." (Pet. ¶ 12.) On August 11, 1997, Monestime was convicted in a New York court of attempted menacing in the second degree, a misdemeanor. (Pet. Ex. F: Certificates of Disposition for Patrick Monestime dated Oct. 22, 2009 ("Certificates").) On July 1, 2002, he was convicted in a New York court of criminal possession of stolen property in the fifth degree, also a misdemeanor. (Pet. ¶ 13; Certificates.)

On August 6, 2009, following his arrest for disorderly conduct, Monestime was detained by ICE at the Varick Federal Detention Facility in Manhattan (the "Varick Facility"), and removal proceedings were instituted against him. (Pet. ¶ 13.) Because the August 1997 and July 2002 convictions were crimes involving moral turpitude, DHS charged Monestime as removable under 8 U.S.C. § 1227(a)(2)(A)(ii). (Pet. ¶ 13.)

On August 27, 2009, an Immigration Judge (the "IJ") ordered Monestime released on a $7,500 bond. (Declaration of Natasha Oeltjen dated Feb. 24, 2010 ("Oeltjen Decl.") Ex. 1: Decision of the Board of Immigration Appeals dated Nov. 19, 2009.) DHS appealed that decision to the Board of Immigration Appeals (the "BIA"). The BIA then vacated the IJ's decision and remanded the case so the IJ could consider whether Monestime was properly subject to mandatory detention under 8 U.S.C. § 1226(c). See In re Joseph, 22 I. & N. Dec. 799, 1999 WL 339053 (B.I.A. May 28, 1999). On January 29, 2010, the IJ denied Monestime's bail application, finding him subject to mandatory detention and ordered him removed to Haiti. (Pet.

2

¶ 14.) Monestime appealed this decision to the BIA. (Transcript of Hearing Conducted on Mar. 3, 2010 at 8-9.)

Following the devastating earthquake in Haiti on January 12, 2010, DHS announced it was "halt[ing] all removals to Haiti for the time being." (Pet. ¶ 16.) DHS declared a Temporary Protected Status for Haitians in the United States for a minimum period of 18 months, and DHS is not currently deporting persons to that country. (Pet. ¶ 16.)

In February 2010, ICE began finalizing plans to close the Varick Facility and transfer all detainees to the Hudson Federal Detention Facility in Kearny, New Jersey (the "Hudson Facility"). (Pet. ¶ 17; Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus dated Feb. 24, 2010 at 4.) On February 11, Monestime, now represented by counsel, made a request to ICE that he be released on parole, bond, or other reasonable conditions. (Pet. ¶ 18.) He argued that continued detention was unjustified in view of DHS's suspension of deportations to Haiti. (Pet. ¶¶ 18-19; Oeltjen Decl. Ex. 3: ICE Decision dated Feb. 24, 2010.) On February 19, Monestime filed this petition. Three days later, he was transferred to the Hudson Facility, which is under the control of ICE's New York Field Office. (Oeltjen Decl. ¶ 7.) Finally, on February 24, ICE denied Monestime's request for parole or release, finding him subject to mandatory detention under 8 U.S.C. § 1226(c).

Monestime petitions this Court to (1) assume jurisdiction over this matter; (2) enjoin Respondents from transferring him out of the jurisdiction of ICE's New York Field Office; (3) issue a writ of habeas corpus ordering his release or, in the alternative, provide a constitutionally adequate detention hearing; and (4) award costs and reasonable attorney's fees under the Equal Access to Justice Act.

3

## DISCUSSION

### I. Jurisdiction to Review Removal Detention

"While the Immigration and Nationality Act (the 'INA') precludes review of the 'Attorney General's discretionary judgment' with regard to 'detention or release of any alien or the grant, revocation, or denial of bond or parole,' the United States Supreme Court rejected the contention that § 1226(e) deprives courts of jurisdiction to consider challenges to the interpretation of the mandatory detention statute." Garcia v. Shanahan, 615 F. Supp. 2d 175, 179 (S.D.N.Y. 2009) (quoting Demore v. Kim, 538 U.S. 510, 517 (2003)). Thus, a district court may review challenges to removal detention based on questions of statutory interpretation or constitutional challenges to the statutory framework. See Garcia, 615 F. Supp. 2d at 179 (citing Henderson v. I.N.S., 157 F.3d 106, 119-122 (2d Cir. 1998)).

A habeas petitioner generally must exhaust administrative remedies before seeking federal court intervention. See Gomez v. Comm'r of I.N.S., No. 01 Civ. 4192 (HB), 2001 WL 637382, at *2 (S.D.N.Y. June 7, 2001); see also Howell v. I.N.S., 72 F.3d 288, 291 (2d Cir 1995); Mejia-Ruiz v. I.N.S., 51 F.3d 358, 364 (2d Cir. 1995). However, exhaustion is not required where it "would be futile 'or where the agency has predetermined the issue' before it." Garcia, 615 F. Supp. 2d at 180 (citing Hy v. Gillen, 588 F. Supp. 2d 122, 125-26 (D. Mass. 2008)). Thus, a number of courts have reviewed the constitutionality of an alien's detention while administrative proceedings were ongoing. See Casas-Castrillon v. Dep't of Homeland Sec., 535 F.3d 942, 950 (9th Cir. 2008) (review of detention while appeal before BIA pending); Garcia, 615 F. Supp. 2d at 179-80; Gillen, 588 F. Supp. 2d at 125-26.

In his petition, Monestime challenges the constitutionality of the mandatory

4

detention statute as applied to him, rather than the propriety of his removal under the INA. Since the IJ classified him as subject to mandatory detention and DHS declined to revisit his mandatory detention status, additional appeals to DHS would be futile. See Garcia, 615 F. Supp. 2d at 180; see also Sulayao v. Shanahan, 09 Civ. 7347 (PKC), 2009 WL 3003188, at *3 (S.D.N.Y. Sept. 15, 2009) ("If . . . Congress has not explicitly required exhaustion, judicial exhaustion doctrine provides that courts may, in their discretion, waive administrative exhaustion under certain circumstances. Futility is one of those circumstances." (internal citations and quotation marks omitted)). Therefore, this Court has jurisdiction to review whether Monestime should be afforded an opportunity to challenge the necessity of his detention during removal.

II. Detention During Removal Proceedings

    a. Legal Standard

To obtain habeas relief pursuant to 28 U.S.C. § 2241, a petitioner must demonstrate that he is being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In the context of a deportation proceeding, a petitioner's right to habeas relief depends, in part, on the stage of the deportation process at the time he files a habeas petition. See Casas-Castrillon, 535 F.3d at 950.

DHS is presently detaining Monestime under the mandatory detention statute governing removal proceedings, 8 U.S.C. § 1226(c), which provides that: "The Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any

offense covered in section 1227(a)(2)(A)(ii)."[1] The Attorney General may release a § 1226(c) detainee only for a limited set of reasons related to the alien's cooperation with a criminal investigation or status as a material witness. See 8 U.S.C. § 1226(c)(2). Section 1226(c) detention is exclusively intended to "govern[] detention of deportable criminal aliens pending their removal proceedings." Demore, 538 U.S. at 527-28. This "brief period" of time "lasts roughly a month and a half in the vast majority of cases in which it is invoked and about five months in the minority of cases in which an alien chooses to appeal." Demore, 538 U.S. at 523, 530. In Demore, the Supreme Court held that detention during the "brief" or limited period that removal proceedings are pending is "constitutionally permissible." 538 U.S. at 531.

After an alien is ordered removed, the Attorney General's detention authority is governed by either § 1231(a) or § 1226(a). Under § 1231(a), when an alien is ordered removed, he is to be deported within 90 days and the Attorney General must detain him during this "removal period." 8 U.S.C. § 1231(a); see also Demore, 538 U.S. at 527-28, 530-31; Zadvydas v. Davis, 533 U.S. 678, 683, 689 (2001); Casas-Castrillon, 535 F.3d at 951 (noting that DHS also interprets § 1226(c) to apply only "during removal proceedings").

However, if an alien will not be deported within 90 days or if he challenges a removal order in federal court, he is subject to discretionary detention under § 1226(a). See Casas-Castrillon, 535 F.3d at 948. Section 1226(a) detainees must be afforded a meaningful opportunity to challenge the necessity of their detention through a hearing, and an alien may be

---

[1] 8 U.S.C. § 1227(a)(2)(A)(ii) provides: "Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefore and regardless of whether the convictions were in a single trial, is deportable."

6

released on bond or conditional parole if he is neither a danger to the community nor a flight risk. 8 U.S.C. § 1226(a)(2); see Casas-Castrillon, 535 F.3d at 950-52 (citing Cooper v. Oklahoma, 517 U.S. 348, 363 (1996)). After a period of mandatory detention expires, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701 (related to post-removal period detentions).

b. Monestime's Detention

Several factors counsel in favor of granting habeas relief to Monestime. First, he has been detained for more than eight months without the opportunity for an individualized hearing. This is contrary to the holding in Demore, where the Supreme Court noted that five months is generally the upper limit for mandatory detention under § 1226(c). See 538 U.S. at 530-31. Moreover, in Zadvydas, the Court held that detentions without a hearing extending more than six months are constitutionally questionable. See 533 U.S. at 700-01 ("We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months."). Whether five or even six months in detention is the constitutional limit need not be addressed on this application because, at more than eight months in ICE detention, Monestime has crossed both the Demore and Zadvydas thresholds.

Further, given that eight years have passed since Monestime was convicted of his second misdemeanor, there appear to be no public safety factors justifying his prolonged detention. After all, the reasons that justify § 1226(c) detention are "based upon the Government's concerns over the risks of flight and danger to the community . . . and the ultimate purpose behind the detention is premised upon the alien's deportability." Demore, 538 U.S. at

7

532 (Kennedy, J., concurring). DHS can only determine whether Monestime poses a risk of flight or danger to the community through an individualized bond hearing. See Zadvydas, 533 U.S. at 690 (citing Jackson v. Indiana, 406 U.S. 715, 738 (1972)). Such a hearing is particularly important when, as here, an alien is being deported for an offense committed many years prior to his detention and removal charges. See Garcia, 615 F. Supp. 2d at 180-81 ("For over a decade, courts analyzing § 1226(c) have consistently interpreted the statute to authorize the government to take an alien into custody on or about the time he is released from custody for the offense that renders him removable."); see also Scarlett v. U.S. Dep't of Homeland Sec. Bureau of Immigration & Customs Enforcement, 632 F. Supp. 2d 214, 219-20 (W.D.N.Y. 2009) (collecting cases in which several district courts hold that § 1226(c) does not apply when the alien was not taken into immigration custody at the time of his release).

Because of the recent catastrophe in Haiti, Monestime faces a likelihood of indefinite detention by ICE. The 18-month moratorium on deportations to Haiti suggests that Monestime will be held for at least two years in ICE detention centers without the opportunity to argue for release. Moreover, Respondents have not indicated their intention to afford Monestime a bond hearing. Collectively, these facts raise serious constitutional concerns. However, as numerous prior courts have recognized, the detention statutes can be interpreted to avoid such doubts. See I.N.S. v. St. Cyr, 533 U.S. 289, 299-300 (2001) ("[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems." (citations omitted)).

Courts have concluded that Sections 1226(a), 1226(c) and 1231(a) each require an

individualized bond hearing at some juncture of an alien's detention. See Demore, 538 U.S. at 530-31 (recognizing implicit time limit in § 1226(c) detention); Zadvydas, 533 U.S. at 700-02 (relating to § 1231(a) detention); Casas-Castrillon, 535 F.3d at 950-51 (relating to § 1226(a) detention); Garcia, 615 F. Supp. 2d at 179-81 (addressing the correctness of § 1226(c) classification by DHS where an alien was detained following arrest for non-removable offense); see also Scarlett, 632 F. Supp. 2d at 221-23 (W.D.N.Y. 2009); D'Alessandro v. Mukasey, 628 F. Supp. 2d 368, 385 (W.D.N.Y. 2009) (same); Fuller v. Gonzales, No. 04 Civ. 2039 (SRU), 2005 WL 818614, at *6 (D. Conn. Apr. 8, 2005) (same). This makes sense given the Supreme Court's guidance that "prolonged or even indefinite detention of aliens" raises significant due process concerns. Demore, 538 U.S. at 531-32 (Kennedy, J., concurring).

Thus, it is of no import that Monestime is detained under a "mandatory" detention statute—what a statute requires of a federal official and what the Constitution demands are not always in harmony. See Zadvydas, 533 U.S. at 699 ("We have found nothing in the history of these statutes that clearly demonstrates a congressional intent to authorize indefinite, perhaps permanent, detention. . . . [T]o avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute [§ 1231(a)]." (citations omitted)). For Monestime, who has been held for eight months on removal charges for misdemeanors committed long ago and is now facing indefinite detention, an individualized hearing on the necessity of his detention is constitutionally required.

Accordingly, Respondents are directed to provide Monestime with an individualized bond hearing and to keep him within the jurisdiction of the New York Field Office of Detention and Removal Operations through the completion of that hearing.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is granted, and Respondents are directed to provide Petitioner Patrick Monestime with an individualized bond hearing before an Immigration Judge by April 23, 2010. The parties shall submit a report to this Court on the outcome of that hearing within five days of a decision by the Immigration Judge. Petitioner is directed to file a letter memorandum on his entitlement to fees under the Equal Access to Justice Act by April 30, 2010.

Dated: April 9, 2010
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Alina Das, Esq.
Washington Square Legal Services, Inc.
245 Sullivan Street, 5th Floor
New York, NY 10012
*Counsel for Petitioner*

Natasha Oeltjen, Esq.
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
*Counsel for Respondents*